|  |  |  |
|---|---|---|
| MARTIN L. NEITCH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10CV00068 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: James P. Jones |
| COMMISSIONER OF | ) | United States District Judge |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford, & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Ameenah Lloyd, Assistant Regional Counsel, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the final decision of the Commissioner.

I

Plaintiff Martin L. Neitch filed this action challenging the final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for disability insurance benefits ("DIB") and social security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§

401-433, 1381-1383d (West 2003 & Supp. 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Neitch protectively filed for benefits in August 2007, alleging disability since July 6, 2007, primarily due to back pain, high blood pressure, and obesity. His claim was denied initially and upon reconsideration. Neitch received a hearing before an administrative law judge ("ALJ"), during which Neitch, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Neitch's claim and the Social Security Administration's Appeals Council denied his request for consideration. Neitch then filed his Complaint with this Court.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Neitch was forty-three years old when he filed for benefits, a "younger individual" under the regulations. *See* 20 C.F.R. § 404.1563(c) (2011). Neitch, who has a high school education, has previously worked as a machine operator and a jailer. He has not engaged in substantial gainful activity since July 2007. Neitch alleges disability primarily due to degenerative disc disease, high blood pressure, and obesity. He also suffers from depression.

Beginning on September 14, 2006, Neitch presented to Neal A. Jewell, M.D., for chronic lower back pain radiating into both legs. Dr. Jewell diagnosed chronic lumboradicular syndrome, degenerative disc disease, slight lumbar scoliosis, and possible bilateral carpal tunnel syndrome. The pain was precipitated by sneezing, and as it was a short-term episode, Dr. Jewell ordered a follow-up to allow for spontaneous relief. He also noted the patient had Flexeril and Lortab for pain and provided a week leave from work. Neitch returned on September 29, 2006, complaining of little improvement in back pain. In reviewing a lumbar MRI, Dr. Jewell noted moderate disc degeneration "without significant protrusion" at L1-L2 and L3-L4 and "small rather broad based central disc protrusion" at L5-S1 but "no major neural element compression or displacement." (R. at 251.) He recommended a steroid injection at L5-S, continued his Lortab, and substituted Voltaren for Flexeril.

On November 6, 2006, Neitch presented to Dr. Jewell reporting "about a 70% improvement." (R. at 250.) Dr. Jewell observed normal gait and posture and good lumbar range of motion with no pain. He prescribed a second steroid injection but did not continue Lortab. However, Neitch called to request Lortab fifteen days later. On December 17, 2006, Neitch reported that his pain had returned to pre-injection levels but his examination yielded results comparable to the previous assessment. He had normal gait and posture, no evidence of extremity

weakness, and no limitation in motion. Dr. Jewell referred Neitch for a CT/myelogram in order to adequately assess surgical options.

On January 15, 2007, after reviewing the myelogram, Dr. Jewell observed mild to moderate degenerative changes without any significant disc protrution and no significant central or foraminal stenosis; he stated, "On the basis of these studies, I think it would be difficult to suggest surgical treatment." (R. at 247.) On February 5, 2007, Dr. Jewell reported these findings to Neitch. Upon examination, there was minimal change, and Dr. Jewell then recommended a treatment program including weight loss, exercise, medicate and due care in his daily activities. On January 18, 2008, Neitch expressed once again that he was interested in surgical intervention and Dr. Jewell order an updated MRI. On February 7, 2008, Dr. Jewell noted minimal change from the previous myelogram and continued to reject Neitch as a candidate for surgery. Further, he denied any Lortab refills and suggested Neitch discontinue its use immediately. Neitch's final visit to Dr. Jewell occurred on June 12, 2008; there were no significant changes upon examination. Dr. Jewell counseled Neitch on pain management and ordered a drug screen for his follow-up visit.

Beginning on May 12, 2006, until December 5, 2008, Neitch also began treatment with Fernando L. Garzon, M.D. During this period, Dr. Garzon referred Neitch to Sleep Zone Diagnostic Center, where he was diagnosed with severe sleep

apnea improved with CPAP titration. He also presented for chest pain and lower back pain. On October 2, 2008, Dr. Garzon completed an insurance-related physical examination. He concluded Neitch could sit frequently; stand, walk, and kneel occasionally; and lift or carry up to ten pounds frequently and up to twenty pounds occasionally. On December 5, 2008, Dr. Garzon completed a physical residual functional capacity ("RFC") questionnaire. He found that Neitch could walk one-half of a city block without rest, sit for thirty minutes, stand for forty-five minutes, and would likely be absent in excess of four days per month due to his impairments. Furthermore, he opined that Neitch would require a cane or other assistive device in occasional standing and walking.

From October 4, 2006, until October 3, 2007, Neitch received treatment from Dennis M. Aguirre, M.D., and Marc Valley, M.D. The treating physicians noted mild antalgic gait, mild scoliotic deformity, and moderate muscle spasms. They prescribed oxycodone. On June 12, 2007, after performing a discography, Dr. Valley reported normal anatomy at L2-3, degenerative changes with a bulging disc at L3-4, and a radial annular tear at L4-5. Neitch was diagnosed with lumbar radiculopathy but there was no treatment alteration. On July 10, 2007, Dr. Aguirre reported no change in Neitch's condition, and as he saw no signs of medication abuse, prescribed methadone for pain. Over the course of the next few visits, Dr. Aguirre and Dr. Valley increased the dosage on Neitch's methadone prescription.

On September 4, 2007, William D. Smith, M.D. directed Neitch to bring all medications to his next visit, including the remaining methadone. However, on October 3, 2007, Neitch reported no remaining methadone, as he "took a couple extra…because of his increased pain." (R. at 329.) Neitch was ultimately dismissed from treatment by Dr. Valley due to a drug screen positive for Lortab.

From July 18, 2002, until November 1, 2007, Neitch was also receiving treatment for lower back pain from David A. Wiles, M.D. During the initial visit, Dr. Wiles noted a normal gait, full strength in the extremities, mild tenderness at L5-S1, and a minimally limited range of motion. Dr. Wiles suggested "conservative treatment modalities consisting of some physical therapy for strengthening, heat and ultrasound and just basic lumbar exercises." (R. at 346.) During several visits, Dr. Wiles advised that non-operative treatment alternatives, such as pain management, were appropriate. Further, Dr. Wiles noted that Neitch was "indicating severe pain even at a disc that looks relatively normal on [the] MRI study." (R. at 340.)

On October 19, 2007, state agency physician Robert McGuffin, M.D., completed a physical RFC assessment. He found that Neitch could lift and carry twenty pounds occasionally and ten pounds frequently; could stand and walk for two hours in an eight-hour workday; and can sit for six hours in an eight-hour

workday. On March 6, 2008, state agency physician Richard Surrusco, M.D., confirmed the findings of the first RFC assessment.

After reviewing the record, the ALJ found that Neitch suffered from the following severe impairments: lumbar degenerative disc disease with radiculopathy, obesity, and high blood pressure. However, the ALJ found that these impairments were not of listing-level severity.

The VE testified that someone with Neitch's RFC, age, and work history had occupational choices in both light and sedentary work. With regard to light work, Neitch could work as a counter cashier, a clerical worker, or a survey interview worker. According to the VE, there are approximately 12,200 jobs in the region and 285,000 jobs in the national economy. With regard to sedentary work, Neitch could work as a telephone order clerk, a clerical worker, or a non-emergency dispatcher. According to the VE, there are approximately 10,800 jobs in the region and 275,000 jobs in the national economy. Relying on this testimony, the ALJ concluded that Neitch was able to perform work that existed in significant numbers in the national economy.

Neitch now challenges the ALJ's unfavorable ruling, arguing that the decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

-7-

Case 2:10-cv-00068-JPJ-PMS   Document 19   Filed 08/24/11   Page 7 of 12   Pageid#: 533

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.... " 42 U.S.C.A. § 423(d)(2)(A) (West Supp. 2011).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *Id*; *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir. 1983). The fourth and fifth steps of the inquiry rely upon an assessment of the claimant's RFC, which is then

compared to the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. (*Id.* at 869.)

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Neitch argues that substantial evidence does not support the ALJ's ruling that he is not disabled under the Act. Neitch asserts that the ALJ did not give appropriate weight to the opinions of treating physicians Dr. Valley and

Dr. Garzon in making the determination of disability. Neitch presented evidence of a severe back impairment that has considerably limited his potential occupational choices. However, while Neitch's impairments have obviously impacted him, there is substantial evidence to support the ALJ's finding that he is not disabled as defined under the Act.

A treating source's medical opinion will control when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2) (2011). Nonetheless, the ALJ may give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Additionally, opinions of disability or ability to work, being dispositive of the case, are administrative determinations and are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e) (2011). The purpose of medical sources is only "to provide evidence, including opinions, on the nature and severity of your impairment(s)." 20 C.F.R. § 404.1527(e)(2) (2011). Thus, the ALJ's evaluation of ability to work, while mindful of the treating physician's opinion as to disability, must rely primarily on those medical opinions which relate to the nature and severity of the impairment.

In the present case, the ALJ reasonably attributed only minimal weight to the opinions on disability of Dr. Garzon and Dr. Valley. In addition to her reserved

discretion on disability determinations, the ALJ found that, due to internal inconsistencies, Dr. Garzon's assessment of physical capabilities was not controlling. *See* 20 C.F.R. § 416.927(c)(2) (2011) (authorizing the consideration of internal inconsistency in determinations of weight). The ALJ also noted that Dr. Valley's assessment only determined ability to work at a particular point in time but gave no indications as to long-term functional capacity. With regard to their opinions on the nature and severity of the impairment, neither physician suggested surgical alternatives, reported minimal worsening and mostly addressed Neitch's self-described pain.

Moreover, the ALJ appropriately relied upon the medical opinions of the state agency physicians. While not bound by these findings, the ALJ must consider the findings as opinion evidence from "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i) (2011). The opinions of Dr. Garzon and Dr. Valley on the nature of Neitch's impairments comport with the determinations of the state agency physicians, who like these treating physicians found medically determinable impairments of degenerative disc disease and obesity. As such, the ALJ's determination, after discounting the treating physicians' conclusory statements on disability, was supported by substantial evidence in the record.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

                          DATED: August 24, 2011

                          /s/ James P. Jones
                          United States District Judge